## UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

WILLIAM WALTERS,

      Petitioner,

v.                                                      Case No. 3:18-cv-1088-TJC-PDB

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

      Respondents.

_____

## **ORDER**

### I.   **Status**

Petitioner, William Walters, an inmate of the Florida penal system, initiated this action by filing a pro se Petition Under 28 U.S.C. § 2254 for Writ of Habeas Corpus by a Person in State Custody. Doc. 1. He also filed a memorandum of law, see Doc. 2, and an appendix, see Doc. 4, supporting his Petition. Petitioner challenges a state court (Duval County, Florida) judgment of conviction for which he is serving a life term of incarceration. Doc. 1. Respondents argue that the Petition is untimely filed and request dismissal of

this case with prejudice. <u>See</u> Doc. 8 (Resp.).[1] Petitioner replied. <u>See</u> Doc. 9. This case is ripe for review.

## II.    <u>One-Year Limitations Period</u>

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) amended 28 U.S.C. § 2244 by adding the following subsection:

> (d)(1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court.  The limitation period shall run from the latest of--
>
> > (A) the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
> >
> > (B) the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State action;
> >
> > (C) the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or

---

[1] Attached to the Response are several exhibits. The Court cites the exhibits as "Resp. Ex."

> (D) the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

28 U.S.C. § 2244(d).

## III.   Analysis

On April 4, 2001, a jury found Petitioner guilty of robbery with a deadly weapon (count one) and grand theft auto (count four).[2] Resp. Ex. A at 199-200. The trial court adjudicated Petitioner as a Habitual Felony Offender and sentenced him to a life term of incarceration as to count one and a ten-year term as to count two. Id. at 214-18. Petitioner, with help from appellate counsel, appealed and the First District Court of appeal per curiam affirmed his judgment and sentences without a written opinion on March 31, 2003. Resp. Ex. I. Petitioner filed with the First DCA a pro se motion for extension of time to seek rehearing, which the First DCA denied on April 30, 2003. Resp. Exs. J-

---

[2] The state nol prossed counts two and three.

3

K. Petitioner's judgment and sentences became final ninety days later on July 29, 2003.[3] His one-year statute of limitations began to run the next day, July 30, 2003.

His one-year term ran for 116 days until it was tolled on November 23, 2003, when Petitioner filed a motion under Florida Rule of Criminal Procedure 3.800(a). Resp. Ex. M. While his Rule 3.800(a) motion was still pending, Petitioner filed a motion under Florida Rule of Criminal Procedure 3.850. Resp. Ex. P. Petitioner's one-year limitations period remained tolled until May 12, 2011, when the First DCA issued its mandate affirming the trial court's denial of Petitioner's Rule 3.850 motions.[4] Resp. Ex. AA. Petitioner's AEDPA statute of limitations resumed the next day and expired 249 days later on Monday, January 16, 2012, without Petitioner filing another motion in state court that

---

[3] Respondents argue that Petitioner's judgment and sentences became final ninety days after the First DCA issued its opinion rather than when it denied Petitioner's pro se motion for an extension of the deadline to seek rehearing. Resp. at 6. For purposes of this Order, the Court calculates the ninety-day period from the later of the two dates.

[4] The trial court denied Petitioner's Rule 3.800(a) motion while his Rule 3.850 motion was still pending, and Petitioner did not appeal that denial. Resp. Ex. N. Petitioner, with the trial court's permission, also filed an amended Rule 3.850 motion. Resp. Exs. R, S. The trial court then conducted an evidentiary hearing on the Rule 3.850 motions before rendering its denial. Resp. Ex. P at 101-44. Petitioner appealed and the First DCA affirmed the denial, completing Petitioner's Rule 3.850 proceedings. Resp. Exs. B, W, X, AA. Petitioner's AEDPA statute of limitations remained tolled until the First DCA issued its May 12, 2011, mandate.

would properly toll the one-year period. Six years, seven months, and twenty days later, Petitioner filed the Petition on September 5, 2018.

Although on June 16, 2011, Petitioner filed a Florida Rule of Criminal Procedure 3.853 motion for postconviction DNA testing, Petitioner's Rule 3.853 motion did not toll the AEDPA limitations period because the motion did not constitute a challenge to the underlying conviction. See Brown v. Sec'y Dep't of Corr., 530 F.3d 1335, 1338 (11th Cir. 2008) (holding that a Rule 3.853 motion for DNA testing is not an "application for post-conviction or other collateral review" to toll the AEDPA limitations period). Further, because there was no time left to toll, Petitioner's February 26, 2018, "motion to dismiss/all writ" did not toll his federal limitations period. Resp. Ex. NN; see Sibley v. Culliver, 377 F.3d 1196, 1204 (11th Cir. 2004) (stating where a state prisoner files postconviction motions in state court after the AEDPA limitations period has expired, those filings cannot toll the limitations period because "once a deadline has expired, there is nothing left to toll").[5] As such, the Petition is untimely filed.

In his Reply, Petitioner acknowledges that this action is untimely filed, but requests that this Court overlook this procedural bar because he "consulted

---

[5] The pro se "motion to correct error in judgment and sentence/request to amend written judgment" that Petitioner filed on February 1, 2018, and which is still pending in state court, also does not affect the Court's finding that the Petition is untimely filed. See State v. Walters, No. 16-1999-CF-14223 (Fla. 4th Cir. Ct.).

with a Florida Bar Attorney, who advised Petitioner that the Rule 3.853 motion . . . was a tolling motion for purpose[s] of AEDPA." Doc. 9 at 3. "When a prisoner files for habeas corpus relief outside the one-year limitations period, a district court may still entertain the petition if the petitioner establishes that he is entitled to equitable tolling." Damren v. Florida, 776 F.3d 816, 821 (11th Cir. 2015). The United States Supreme Court established a two-prong test for equitable tolling of the one-year limitations period, stating that a petitioner "must show (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstances stood in his way and prevented timely filing." Lawrence v. Florida, 549 U.S. 327, 336 (2007); see also Brown v. Barrow, 512 F.3d 1304, 1307 (11th Cir. 2008) (noting the Eleventh Circuit "held that an inmate bears a strong burden to show specific facts to support his claim of extraordinary circumstances and due diligence." (citation omitted)). "[E]quitable tolling is an extraordinary remedy" that is "'typically applied sparingly.'" Thomas v. Att'y Gen. of Fla., 992 F.3d 1162, 1179 (11th Cir. 2021) (quoting Hunter v. Ferrell, 587 F.3d. 1304, 1308 (11th Cir. 2009)).

Here, Petitioner contends that "had [he] been correctly advised, he would have promptly filed the instant 2254 Petition seven [] year[s] ago at the conclusion of his Rule 3.850" proceedings. Doc. 9 at 3. However, "attorney negligence, even gross or egregious negligence, does not by itself qualify as an 'extraordinary circumstance' for purposes of equitable tolling; either

6

abandonment of the attorney-client relationship, . . . or some other professional misconduct or some other extraordinary circumstance is required." Clemons v. Comm'r, Ala. Dep't of Corr., 967 F.3d 1231, 1242 (11th Cir. 2020) (quoting Cadet v. Fla. Dep't of Corr., 853 F.3d 1216, 1227 (11th Cir. 2017)). Petitioner asserts no facts showing he retained this unnamed Florida Bar attorney to file postconviction motions on his behalf or that this attorney abandoned him under circumstances justifying Petitioner's near seven-year delay in pursuing his federal habeas remedies following his Rule 3.850 litigation. Thus, Petitioner is not entitled to equitable tolling.

Petitioner also seeks to overcome the untimely nature of his Petition by raising a claim of actual innocence. Doc. 9 at 3-9. "[A]ctual innocence, if proved, serves as a gateway through which a petitioner may pass whether the impediment is a procedural bar . . . or, as in this case, expiration of the statute of limitations." McQuiggin v. Perkins, 133 S. Ct. 1924, 1928 (2013). To avoid the one-year limitations period based on actual innocence, a petitioner must "present new reliable evidence that was not presented at trial" and "show that it is more likely than not that no reasonable juror would have found petitioner guilty beyond a reasonable doubt in light of the new evidence." Rozzelle v. Sec'y, Fla. Dep't of Corr., 672 F.3d 1000, 1011 (11th Cir. 2012) (quotations and citations omitted); see Schlup v. Delo, 513 U.S. 298, 327 (1995) (finding that to make a showing of actual innocence, a petitioner must show "that it is more

7

likely than not that no reasonable juror would have found [the p]etitioner guilty beyond a reasonable doubt").

Here, Petitioner asserts that he "has presented new reliable exculpatory evidence in his 'Sworn Memorandum of Law and Fact' (Doc. 1), and 'Appendix' (Doc. 4), demonstrating his actual innocence . . . due to his counsel's ineffectiveness." Doc. 9 at 9. That is to say, Petitioner argues that the claims raised in his Petition satisfy the actual innocence exception to the one-year time bar and warrant a merits determination. The Court disagrees. After a thorough review of the pleadings and the state court record, the Court has determined that Petitioner has offered no new reliable evidence that was unavailable at the time of his trial.

Indeed, Petitioner, in some manner, previously presented to the trial or state appellate court all ten of the claims he raises in the Petition and the supporting memo and appendix.[6] See Resp. Exs. F, G, P at 101-243. And now,

_____

[6] During his direct appeal, Petitioner, through appellate counsel, raised the same underlying claims as those alleged in Grounds One, Eight, and Nine of the Petition. See Resp. Ex. F. The issues underlying the claims in Grounds Two, Seven, and Ten of the Petition were considered during the trial court's evidentiary hearing on Petitioner's Rule 3.850 motions, Resp. Ex. P at 138-243, and the trial court's subsequent order of denial, id. at 101-12. Further, the issues underlying Grounds Three, Four, Five, and Six of the Petition were either discussed during trial counsel's cross-examination of state witnesses or are not exculpatory. See Resp. Ex. B at 265 (video of the victim's car being stolen), 334-37 (defense's initial motion for judgment of acquittal arguing lack of evidence supporting grant theft charge), 200 (testimony on police procedure of disposing of photo lineup if suspect photo not included in photo spread).

Petitioner merely highlights the same inconsistencies that trial counsel attempted to elicit during his cross-examinations of state witnesses and reargues evidentiary issues which the state court already rejected.

The record before the Court details evidence of Petitioner's multiple-day crime spree. It began when Petitioner stole Bobby Jackson's 1994 four-door, gray Ford Tempo from the parking lot of a Starvin Marvin. Resp. Ex. B at 261-65. The next day, Petitioner used a knife to rob Candice Burgess and Donna Siegel as they were working the cash register at Lil' Champ. Id. at 158-64. Siegel identified Petitioner as the knife-wielding individual who assaulted them. Id. at 162. Burgess also identified Petitioner as the assailant and testified that she saw Petitioner driving away from Lil' Champ after the robbery in a gray/silver sedan. Id. at 228, 235. A few days later, Officer Paul Williams conducted a traffic stop of a speeding gray sedan and identified Petitioner as the driver of the vehicle. Id. at 208-12. Petitioner fled from the traffic stop, crashed the vehicle, and escaped on foot evading arrest. Id. at 212. Jackson confirmed that the recovered gray sedan was his stolen vehicle, and police found Petitioner's fingerprints inside the car. Id. at 267, 314. Later, officers apprehended Petitioner during the investigation of an unrelated robbery.[7] Resp. Ex. F at 4.

---

[7] The trial court granted defense counsel's pretrial motion to suppress evidence of the facts and circumstances surrounding Petitioner's ultimate arrest.

While trial counsel conducted in-depth cross-examinations of the eyewitnesses and presented a defense expert witness who testified about the unreliability of eyewitness testimony, the jury found Petitioner guilty of each crime. Petitioner then collaterally attacked his convictions. The trial court conducted an extensive evidentiary hearing during which trial counsel discussed, inter alia, the unreliability of Petitioner's alleged alibi witnesses (Ronald Fafaglio and Debra Martin) and the extent of his pretrial efforts to suppress incriminating evidence, including the successful exclusion of a knife found in the gray vehicle. See Resp. Ex. P at 207-39. That said, the state court rejected Petitioner's postconviction arguments, as well. See id. at 101. Petitioner now attempts to reiterate those previous allegations to overcome the procedural time bar. However, he has not produced exculpatory evidence, trustworthy eyewitness accounts, or critical physical evidence not previously available. He has failed to point to any evidence to show it is more likely than not that no juror, acting reasonably, would have found him guilty beyond a reasonable doubt because of new evidence. The Petition is due to be dismissed.

Accordingly, it is

**ORDERED AND ADJUDGED**:

1.    The Petition (Doc. 1) and this case are **DISMISSED with prejudice**.

2.      The **Clerk of Court** shall enter judgment accordingly, terminate any pending motions, and close this case.

3.      If Petitioner appeals this Order, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the **Clerk** shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.[8]

**DONE AND ORDERED** at Jacksonville, Florida, this 26th day of July, 2021.



TIMOTHY J. CORRIGAN
United States District Judge

Jax-7

C:      William Walters, #071260
        Anne Conley, Esq.

---

[8] The Court should issue a certificate of appealability only if Petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Petitioner "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," <u>Tennard v. Dretke</u>, 542 U.S. 274, 282 (2004) (quoting <u>Slack v. McDaniel</u>, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 335-36 (2003) (quoting <u>Barefoot v. Estelle</u>, 463 U.S. 880, 893 n.4 (1983)). Here, after consideration of the record as a whole, the Court will deny a certificate of appealability.